# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| In the Matter of the Personal Restraint of | No. 60116-8-II |
| --- | --- |
| JEFFREY JOEL LEPLEY, | UNPUBLISHED OPINION |
| Petitioner. | |

GLASGOW, J.—After drinking mimosas over brunch, Jeffrey Lepley crashed his car with his wife in the passenger seat, killing her. The State charged Lepley with vehicular homicide.

At trial, the State offered evidence that Lepley's blood alcohol concentration exceeded the legal limit within two hours of the crash. Even though Lepley's birthdate was incorrect on the blood vials, Lepley's trial counsel stipulated to the foundation of the blood alcohol concentration evidence. The jury convicted Lepley, and the trial court imposed a sentence at the high end of the standard sentencing range.

Lepley appealed, and we affirmed his conviction. Lepley filed this timely personal restraint petition, arguing that he received ineffective assistance of trial counsel based on the stipulation and ineffective assistance of appellate counsel based on a failure to argue on appeal that the trial court improperly considered prior convictions when denying an exceptional sentence downward. We disagree and deny Lepley's petition.

FACTS

Lepley and his wife, Trisha, went to a restaurant for brunch. *State v. Lepley*, No. 56531-5-II, slip op. at 2 (Wash. Ct. App. Mar. 21, 2023) (unpublished).[1] While they ate, they drank mimosas. On their way home, Lepley crashed the car, killing Trisha. When Sheriff's Deputy Travis Hoffman arrived at the scene and spoke with Lepley, he asked Lepley if he had been drinking, and Lepley responded affirmatively. Two firefighters who rode to the hospital with Lepley detected the smell of alcohol on Lepley's breath.

At the hospital, Deputy Hoffman obtained a warrant, and a phlebotomist collected samples of Lepley's blood. A blood test later revealed that at the time the blood was drawn, Lepley's blood alcohol concentration was 0.19 g per 100 mL.

The State charged Lepley with vehicular homicide, and the case proceeded to a jury trial. When Deputy Hoffman testified, he identified Lepley as the person he interacted with at the scene of the collision and later at the hospital. After Hoffman testified about witnessing the blood draw, the State successfully moved to admit a picture of the blood vials into evidence. Lepley's birth date as listed on the vials was different from his birth date as listed in the information charging him with vehicular homicide.

Regarding the blood draw, the parties stipulated that a lab technician "'extracted the defendant's blood,'" mixed "'vials of the defendant's blood,'" and "'handed the blood tubes back to'" Hoffman. *Lepley*, No. 56531-5-II, slip op. at 3 (quoting record). The parties also stipulated that Lepley would not be able to "'contest the foundational requirements'" of the blood draw. *Id.* at 4 (quoting record). The trial court read the following to the jury: "'On July 19, 2019, at

_____

[1] https://www.courts.wa.gov/opinions/pdf/D2%2056531-5-II%20Unpublished%20Opinion.pdf

approximately 5:52 p.m., [a lab technician] was qualified to perform a legal blood draw and followed the required procedures and protocol when she collected samples of blood from Mr. Jeffrey Joel Lepley at Tacoma General Hospital at the request of Deputy Travis Hoffman."' *Id.* (alteration in original) (quoting record).

The jury found Lepley guilty as charged. At Lepley's sentencing hearing, several of Trisha's family members and friends testified about the loss they experienced. At the time of sentencing, Lepley's offender score was zero. The State noted that Lepley's standard range was 78 to 102 months in prison and recommended 102 months.

Lepley's counsel argued that an exceptional downward sentence of 48 months was appropriate. He contended that such a sentence was "'fitting within the facts of this case and the loss, not only that Trisha Lepley's family has suffered, but also the loss that Mr. Lepley has suffered and will continue to suffer long after the prison sentence is over." *Id.* at 6 (quoting record).

The trial court adopted the State's recommendation and imposed a sentence of 102 months in prison. In explaining its reasoning, the trial court noted the seriousness of the offense, the fact that Lepley's blood alcohol concentration level was more than twice the legal limit, the fact that "'Lepley was previously convicted of two serious crimes'" in California that had since washed out, the fact that Lepley had taken no steps to engage in chemical dependency treatment since his arrest, and the victim impact statements. *Id.* (quoting record).

Lepley appealed, arguing that the State presented insufficient evidence to convict him and that the trial court erred by declining to impose an exceptional sentence below the standard sentencing range. We affirmed Lepley's conviction. We declined to review Lepley's sentence because it was within the standard sentencing range, and Lepley did not argue that the trial court

categorically refused to consider his request for an exceptional downward departure or that the trial court denied his request on an improper basis.

Lepley filed a timely petition seeking relief from personal restraint.

ANALYSIS

To prevail in a PRP, the petitioner must establish by a preponderance of the evidence a constitutional error that resulted in actual and substantial prejudice or a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice. *In re Pers. Restraint of Meredith*, 191 Wn.2d 300, 306, 422 P.3d 458 (2018). Establishing "actual and substantial prejudice" means more than merely showing the possibility of prejudice; the petitioner must establish that if the alleged error had not occurred, the outcome more likely than not would have been different. *In re Pers. Restraint of Meippen*, 193 Wn.2d 310, 315-16, 440 P.3d 978 (2019).

## I. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Lepley argues that he received ineffective assistance of counsel when his trial counsel stipulated that a phlebotomist extracted Lepley's blood and handed the vials of blood to Deputy Hoffman because the blood vials at trial reflected the wrong birth date for Lepley. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee criminal defendants the right to effective assistance of counsel. *State v. Vazquez*, 198 Wn.2d 239, 247, 494 P.3d 424 (2021). To prevail on an ineffective assistance of counsel claim, a petitioner must show both that defense counsel's performance was deficient and that the deficient performance was prejudicial. *Id*. at 247-48. Because both prongs of the

ineffective assistance of counsel test must be met, the failure to demonstrate either prong will end this court's inquiry. *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018).

"To rebut the presumption of reasonableness, a defendant must establish an absence of any legitimate trial tactic that would explain counsel's performance." *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 539, 397 P.3d 90 (2017). The petitioner must prove that "counsel's performance fell below an objective standard of reasonableness in light of all the circumstances." *Id*. at 538. Generally, a stipulation as to facts is a tactical decision. *State v. Ashue*, 145 Wn. App. 492, 505, 188 P.3d 522 (2008). Appellate courts apply "exceptional deference" when "evaluating counsel's strategic decisions," and "[i]f trial counsel's conduct can be characterized as legitimate trial strategy or tactics," it will not support a claim of ineffective assistance. *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002).

Here, Lepley's trial counsel made the tactical decision to stipulate to the foundation for the blood draw. Counsel stipulated that a certified phlebotomist drew blood from Lepley at the hospital at the request of Deputy Hoffman. The stipulation was presented "in lieu of live testimony" from witnesses and avoided the presentation of cumulative evidence or damaging the defense's credibility with the jury. Clerk's Papers at 14.

There was no dispute at trial whether the blood collected and tested belonged to Lepley. Deputy Hoffman testified that he watched the phlebotomist draw blood from Lepley, who he identified in court, and that the phlebotomist handed him the labelled vials of Lepley's blood. Deputy Hoffman further testified that he recognized the vials of blood because it had the phlebotomist's name, Lepley's name, and the date of the blood draw on the label. Moreover, had Lepley not stipulated to the foundational requirements of the blood draw, the State likely would

have called the phlebotomist as a witness, and the phlebotomist could have confirmed they drew the blood in the vials from Lepley.

Under these circumstances, trial counsel's tactical decision to stipulate to the foundational requirements of the blood draw, despite the incorrect birth date on the vials, did not fall below an objective standard of reasonableness, and given Deputy Hoffman's testimony, Lepley has not shown prejudice. Accordingly, Lepley's ineffective assistance claim regarding trial counsel fails.

## II. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Lepley also argues that he received ineffective assistance of appellate counsel because appellate counsel failed to argue in his direct appeal that the trial court relied on an impermissible bases to deny an exceptional downward sentence. We disagree.

In the context of a personal restraint petition asserting ineffective assistance of appellate counsel, Lepley must demonstrate that the legal issue not raised in his direct appeal had merit, and that he was substantially prejudiced by his counsel's failure to raise it. *In re Pers. Restraint of Dalluge*, 152 Wn.2d 772, 777-78, 100 P.3d 279 (2004). Lepley fails to meet that standard here.

"The trial court has discretion to sentence anywhere within the standard range without providing any reasons in support of its decision." *State v. Mail*, 65 Wn. App. 295, 297, 828 P.2d 70 (1992); *see also* RCW 9.94A.585(1) ("A sentence within the standard sentence range . . . for an offense shall not be appealed."). Where "a defendant has requested an exceptional sentence below the standard range[,] review is limited to circumstances where the court has refused to exercise discretion at all or has relied on an impermissible basis for refusing to impose an exceptional sentence below the standard range." *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997).

A court refuses to exercise discretion where it categorically refuses to impose an exceptional sentence "under any circumstances; *i.e.*, it takes the position that it will never impose a sentence below the standard range." *Id.* A court relies on an impermissible basis for refusing to impose an exceptional sentence where "it takes the position, for example, that no drug dealer should get an exceptional sentence down or it refuses to consider the request because of the defendant's race, sex[,] or religion." *Id.* Conversely, where "a trial court . . . has considered the facts and has concluded that there is no basis for an exceptional sentence," the defendant may not appeal the court's exercise of its discretion. *Id.*

Lepley contends that his appellate counsel rendered ineffective assistance by failing to argue that the trial court relied on an impermissible basis to deny Lepley's request for an exceptional downward sentence. Specifically, he contends that the trial court improperly considered two prior convictions that had long ago washed out. But Lepley offers no authority to support his contention that the trial court was prohibited from considering Lepley's full criminal history in determining whether an exceptional sentence was appropriate under the circumstances.

Lepley cites *State v. Oksoktaruk*, 70 Wn. App. 768, 774, 856 P.2d 1099 (1993) to support his contention, but that case is of no benefit to Lepley. There, the court held that the trial court properly relied on washed-out convictions to impose an exceptional sentence upward; it did not hold that washed-out convictions could *not* be considered to deny an exceptional sentence downward. *See Id.*

Lepley has failed to establish that the trial court relied on an impermissible basis for declining to impose an exceptional sentence. Accordingly, his appellate counsel did not perform

No. 60116-8-II

deficiently by not arguing otherwise. Lepley's ineffective assistance of appellate counsel argument fails.

CONCLUSION

We deny Lepley's personal restraint petition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

CRUSER, C.J.

PRICE, J.